IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HOMEQUEST MORTGAGE, LLC ET AL.,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**HRB TAX GROUP, INC.,**<br><br>    **Defendant.** | Case No. 14-CV-2008-DDC-KMH |

## MEMORANDUM AND ORDER

Plaintiffs HomeQuest Mortgage, LLC, Donna L. Huffman, and Laurell E. Huffman brought an arbitration action against defendant HRB Tax Group, Inc. and lost. Plaintiffs now seek an order vacating the arbitration award.

HomeQuest Mortgage is a family partnership owned by Donna Huffman and Laurell E. Huffman. In 2009, plaintiffs hired defendant to perform various federal income tax-related services. Plaintiffs became dissatisfied with defendant's performance and eventually initiated arbitration proceedings, accusing defendant of negligence, misrepresentation, and violating the Kansas Consumer Protection Act. On June 19, 2013, an arbitrator denied all of plaintiffs' claims and ordered plaintiffs to pay $300.00 to defendant for expenses.

Plaintiffs filed a "Petition" to vacate the arbitration award in Kansas state court on September 18, 2013, but did not serve it on defendant until December 13, 2013. Though plaintiffs style their request to vacate the arbitration award as a "Petition," § 6 of the Federal Arbitration Act "makes clear that a request to vacate or affirm an arbitration award shall be made in the form of a motion—not in the form a complaint or other pleading." *Cessna Aircraft Co. v. Avcorp Indus., Inc.*, 943 F. Supp. 2d 1191, 1195 (D. Kan. 2013). Thus, the Court will refer to, and ana-

1

lyze, plaintiffs' "Petition" as a Motion to Vacate. Defendant removed plaintiffs' Motion to Vacate on January 10, 2014.

Defendant has filed an Opposition to plaintiffs' Motion to Vacate or, in the alternative, Motion to Dismiss (Doc. 4) and a Motion to Confirm the Arbitration Award (Doc. 5). Plaintiffs have filed a Motion to Remand (Doc. 12). For the reasons explained below, the Court denies plaintiffs' Motion to Remand. In addition, it denies plaintiffs' Motion to Vacate and grants defendant's Motion to Confirm the Arbitration Award.

**I. Motion to Remand**

Defendant removed this action to federal court on January 10, 2014. Plaintiffs' Motion to Remand asserts several arguments contending that the Court should not exercise subject matter jurisdiction over this case.

"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013). Defendant argues that the Court has subject matter jurisdiction over this action based on diversity of citizenship under 28 U.S.C. § 1332. As the party removing this case to federal court, defendant bears the burden of establishing jurisdiction by a preponderance of the evidence. *Id.* at 985. To invoke diversity jurisdiction, a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000. *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006). In addition, defendant must prove that it timely removed the case under 28 U.S.C. § 1446(b).

### A. Diversity of Citizenship

Complete diversity does not exist when any plaintiff has the same residency as even a single defendant. *Dutcher*, 733 F.3d at 987. It is undisputed that plaintiffs are Kansas residents. However, the parties disagree about the proper defendant in this case.

Plaintiffs' Motion to Vacate asserted claims against "H&R Block," but "H&R Block" is not a legal entity with capacity to be sued. HRB Tax Group, Inc. is a subsidiary of H&R Block, Inc. and is the entity with which plaintiffs contracted for tax preparation services. Furthermore, plaintiffs served their summons on a field office owned and operated by defendant HRB Tax Group. The written arbitration names "H&R Block," not HRB Tax Group, as the "Respondent," but the award discusses alleged misconduct in "tax-related services" performed by HRB Tax Group. As a result, defendant HRB Tax Group believed that plaintiff brought claims against it, accepted service of plaintiffs' Motion to Vacate, and removed this action to federal court.

More importantly, regardless of whether plaintiffs sued H&R Block, Inc. or HRB Tax Group, the Court's analysis of the merits of the parties' arguments is exactly the same. Both entities are Missouri corporations and both entities have their principal place of business in Kansas City, Missouri. As a result, complete diversity exists in either case. For purposes of this Order, the term "defendant" will continue to refer to HRB Tax Group.

Plaintiffs next argue that 28 U.S.C. § 1332(c) destroys diversity because the provision renders defendant a Kansas citizen. Section 1332(c) provides that "in any direct action against the insurer of a policy or contract of liability insurance … to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of—(A) every State and foreign state of which the insured is a citizen." However, this provision applies only to actions in which "the insured is a tortfeasor and the plaintiff is seeking damages through the insured's pro-

3

vider." *Helvey v. Am. Nat. Life Ins. Co. of Tex.*, No. 12-1109, 2012 WL 2149676, at *2 (D. Kan. June 13, 2012). Plaintiffs do not seek damages from defendant in their role as an insurer for an insured tortfeasor. As a result, § 1332(c) does not apply here, and complete diversity exists between plaintiffs and defendant.

### B. Amount in Controversy

Plaintiffs argue that because they seek only declaratory relief—to vacate the arbitration award of just $300—the amount in controversy in this lawsuit does not exceed the minimum jurisdictional amount of $75,000. Federal courts have used two general approaches to determine the amount in controversy associated with confirming or vacating an arbitration award: the award and the demand approaches.[1] *Karsner v. Lothian*, 532 F.3d 876, 882 (D.C. Cir. 2008). Under the award approach, the amount in controversy is determined by the amount of the underlying arbitration award regardless of the amount sought. *E.g.*, *Reichle v. Morgan Stanley DW, Inc.*, 396 F. Supp. 2d 1312, 1314-15 (M.D. Fla. 2005). Under the demand approach, the amount in controversy is the amount sought in the underlying action rather than the amount awarded. *E.g.*, *Karsner*, 532 F.3d at 882.

The Tenth Circuit has decided only one case in which it resolved a dispute over the amount in controversy presented by a motion to confirm an arbitration award. *Bad Ass Coffee Co. of Haw. v. Bad Ass Coffee Ltd. P'ship*, 25 F. App'x 738 (10th Cir. 2001). In *Bad Ass Coffee*, an arbitrator issued what was effectively a declaratory judgment that the appellant-distributor had breached the terms of a contract to distribute specialty coffee, which justified the appellee-supplier's decision to terminate the contract. *Id.* at 741-42. The arbitrator also ordered the ap-

---

[1] Courts also have used the "remand approach," but it only applies if the party appealing the arbitration award seeks to vacate the award *and* requests a new arbitration hearing. *E.g.*, *Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1325 (11th Cir. 2005). Here, plaintiffs seek only to vacate the arbitration award.

pellant to pay $5,800 in fees and expenses. *Id.* On appeal of the district court's order confirming the arbitration award, the appellant argued that the $5,800 fee award was the amount in controversy, and it did not meet the required amount for diversity jurisdiction. *Id.* at 743.

The Tenth Circuit disagreed. *Id.* It held: "To determine the amount in controversy we must look to 'the pecuniary effect an adverse declaration will have on either party to the lawsuit.'" *Id.* (citing *City of Moore v. Atchison, Topeka & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983)). The court concluded that because the appellant had paid $100,000 for the right to distribute the coffee under the contract at issue, the appellant's "argument that the amount in controversy does not exceed $75,000 is disingenuous." *Id.* In other words, an "adverse declaration" on the declaratory relief sought in the underlying arbitration would subject the appellee-supplier to up to $100,000 in damages, so the amount in controversy exceeded the minimum jurisdictional amount. The Tenth Circuit therefore looked beyond the amount of the actual arbitration award to the amount at issue in the underlying arbitration, to determine the amount in controversy for purposes of diversity jurisdiction.

The Court is aware that *Guerzon v. General Steel Domestic Sales, LLC*, a 2011 District of Colorado case, may have interpreted *Bad Ass Coffee* differently. 2011 WL 3608451, at *1 (D. Colo. 2011). There, the Colorado court cited the language from *Bad Ass Coffee* instructing courts to look at the effect an "adverse declaration" would have on either party to the arbitration award. But it limited its amount in controversy analysis to the amount actually awarded by the arbitrator. *Id.* However, as explained above, the Court understands the "adverse declaration" in *Bad Ass Coffee* to refer to the declaratory judgment awarded by the arbitrator in the underlying contract dispute. 25 F. App'x at 743. Thus, the Court believes the Tenth Circuit has adopted a

5

"demand"-based standard that district courts must use to determine the amount in controversy in actions seeking to confirm or vacate arbitration awards.

Here, the arbitrator awarded only $300 to defendant. However, in their arbitration petition, the plaintiffs alleged at least 54 discrete violations of the Kansas Consumer Protection Act, each of which carry a civil penalty of up to $10,000. *See* K.S.A. § 50-677. As a result, the Court concludes that the amount in controversy in the underlying arbitration action exceeds $75,000, which satisfies the minimum jurisdictional amount.

### C. Timely Removal

Plaintiffs argue that defendant failed to remove this action in the time required by 28 U.S.C. § 1446(b) because defendant did not file its notice of removal when initially presented with plaintiffs' claims in arbitration. Section 1446(b)(1) requires a defendant to remove a case within 30 days after the defendant receives service of the initial pleading against him. However, as 28 U.S.C. § 1441(a) makes clear, removal applies only to civil actions "brought in a *State court*" (emphasis added). Thus, contrary to plaintiffs' argument, initiating the arbitration proceedings did not start the 30-day removal clock. Defendant accepted service of plaintiffs' Motion to Vacate on December 13, 2013, and filed its Notice of Removal within 30 days on January 10, 2014. As a result, defendant timely removed this action.

### D. Other Arguments

The Court can dispose quickly with plaintiffs' final two arguments against jurisdiction. First, plaintiffs assert that Kansas law governs this case, so it should not be litigated in federal court. Even if true, the very nature of diversity jurisdiction frequently requires a federal court to decide issues controlled by state law. Applying Kansas state law does not justify remand.

Second, plaintiffs claim that this is a supplemental, not independent, suit which cannot be removed. This argument is incorrect. Plaintiffs have brought an independent action to vacate an arbitration award, and it is properly removable. *See Legacy Trading Co., Ltd. v. Hoffman*, 363 F. App'x 633, 634 (10th Cir. 2010) (federal court exercising jurisdiction over a motion to vacate an arbitration award).

Defendant has established the requirements for removal under 28 U.S.C. § 1441(b) based on diversity: the parties are completely diverse, the amount in controversy exceeds $75,000, and the defendant timely removed the action within 30 days of accepting service of plaintiffs' Motion to Vacate. The Court has subject matter jurisdiction over this action and therefore denies plaintiffs' Motion to Remand (Doc. 12).

## II. Plaintiffs' Motion to Vacate

Having concluded that federal jurisdiction exists, the Court proceeds to the merits of the parties' motions. Plaintiffs' Motion to Vacate seeks an order from the Court setting aside the arbitrator's June 19, 2013, decision on plaintiffs' claims against defendant. Plaintiffs make several substantive arguments under the Kansas Uniform Arbitration Act seeking to validate its contention that the Court should vacate the arbitration award. In response, defendant argues that the Federal Arbitration Act governs this dispute, not the KUAA, and that plaintiffs' motion is time-barred.

### A. The FAA Controls the Arbitration Agreement.

The FAA governs all arbitration agreements evidencing a transaction "involving commerce." 9 U.S.C. § 2; *In re Arbitration Between Ins. Intermediaries, Inc. & Harbor Underwriters, Inc.*, No. 02-2156, 2002 WL 1602417, at *2 n.1 (D. Kan. July 17, 2002). "The effect of [§ 2] is to create a body of federal substantive law of arbitrability, applicable to *any arbitration*

*agreement within the coverage of the Act.*"  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (emphasis added).  As a result, the FAA governs if the tax preparation services performed by defendant "involved commerce" under 9 U.S.C. § 2.

The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).  Though this transaction originally involved Kansas plaintiffs contracting with defendant's Topeka office, it nevertheless satisfies the FAA's "involving commerce" test.  The contract between the parties for tax preparation services, taken alone, may not have had a "substantial effect on interstate commerce."  However, Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice … subject to federal control."  *Id.* (internal quotes omitted).  Defendant provides tax preparation services all over the United States.  The general practice of preparing federal tax returns for customers nationwide clearly impacts the national economy, which makes evident Congress' power to regulate that activity under the Commerce Clause.  As a result, the disputed tax preparation services "involve commerce," and the FAA governs this dispute.

### B. Plaintiffs' Motion to Vacate is Time-barred.

Applying the FAA, the Court cannot reach plaintiffs' substantive arguments to vacate the arbitration award because the motion is time-barred.  Challenges to an arbitration award under the FAA "must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  "A party to an arbitration award who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of

Case 2:14-cv-02008-DDC-KMH   Document 22   Filed 08/05/14   Page 9 of 11

the award." *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158 (10th Cir. 2007).

The arbitrator issued his written order on June 19, 2013, and plaintiffs admit they received it on June 20, 2013.[2] Though plaintiffs filed their Motion to Vacate on September 18, 2013, they did not serve it on defendants until December 13, 2013. Section 12 of the FAA requires that a challenge to an arbitration award "must be served" on the adverse party within three months after the award is filed; here, plaintiffs waited nearly six months before doing so. 9 U.S.C. § 12. As a result, plaintiffs have "forfeit[ed] the right to [seek] judicial review of the award." *Pfannenstiel*, 477 F.3d at 1158. The Court denies plaintiffs' Motion to Vacate (Doc. 1-1).

### III. Motion to Confirm Arbitration Award

Concurrently with its Opposition to plaintiffs' Motion to Vacate, defendant filed a Motion to Confirm the Arbitration Award (Doc. 5). The question of a district court's jurisdiction to confirm an arbitration award is a two-step inquiry. *Int'l Label Serv., Inc. v. Engineered Data Prods., Inc.*, 15 F. App'x 717, 719 (10th Cir. 2001). First, the party seeking confirmation must establish federal subject matter jurisdiction. *Id.* As discussed above, the Court has diversity jurisdiction here. Second, the movant must show that the parties agreed, either explicitly or implicitly, that the arbitration award would be subject to judicial confirmation. *Id.*

Section 9 of the FAA determines when an award is subject to judicial confirmation:

> *If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration,* … then at any time within one year after the award is made any party to the arbitration may apply to [a] court … for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

---

[2] Doc. 1-1 at ¶ 10 (Motion to Vacate).

9 U.S.C. § 9 (emphasis added).  There is no evidence that the parties expressly consented to judicial confirmation of the arbitration award.  However, the Tenth Circuit has recognized that "[a] party who consents by contract to arbitration before the [American Arbitration Association] also consents to be bound by the procedural rules of the AAA, unless that party indicates otherwise in the contract."  *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867 (10th Cir. 1999).

Plaintiffs agreed to arbitrate this dispute under AAA rules.  On October 6, 2012, each plaintiff signed and filed a Demand for Arbitration containing the following provision:  "The named claimant, a party to an arbitration agreement dated October 15, 2009, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration."[3]  There is no evidence that either party objected to following AAA rules in their arbitration agreement; as a result, they consented to be bound by AAA rules.  When the parties entered their agreement to arbitrate, the AAA Commercial Arbitration Rules in effect provided that "[p]arties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."[4]  Thus, the parties agreed that a federal court may enter an order confirming the arbitration award.

In addition, this Court is a proper tribunal to confirm the award.  Section 9 of the FAA provides that if no court is specified in the agreement of the parties, then an application to confirm an award "may be made to the United States court in and for the district within which such award was made."  9 U.S.C. § 9.  The parties make no argument that the agreement identified a particular court to confirm the arbitration award so the award can be confirmed by a court sitting

---

[3] Docs. 12-2 to 12-4 (Demands for Arbitration).

[4] AAA, Commercial Arbitration Rules and Mediation Procedures R-48(c) (2009), *available at* http://www.adr.org.

in the district where the award was made.  Here, the arbitration award was made in Kansas; therefore, this Court has authority under § 9 to confirm the award.

A federal district court with jurisdiction to do so "must grant" a motion to confirm an arbitration award, "unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of this title."  9 U.S.C. § 9.  The Court has already denied plaintiffs' Motion to Vacate, and plaintiffs make no argument to "modify" or "correct" the arbitration award.  Because there is no ground on which to vacate, modify, or correct the arbitration award, the Court grants defendant's Motion to Confirm the Arbitration Award.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Confirm the Arbitration Award (Doc. 5) is granted.  Plaintiffs are ordered to pay defendant the sums described in the award.  Defendant's Opposition to plaintiffs' Motion to Vacate or, in the alternative, Motion to Dismiss (Doc. 4) is denied as moot.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs' Motion to Remand (Doc. 12) and plaintiffs' Motion to Vacate (Doc. 1) are denied.

**IT IS SO ORDERED.**

**Dated this 5th day of August, 2014, at Topeka, Kansas**

                                            **s/ Daniel D. Crabtree**
                                            **Daniel D. Crabtree**
                                            **United States District Judge**